IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>v.<br><br>ADRIAN L. DUNN,<br><br>                Defendant. | No. 09-00188-04-CR-W-BCW |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S PRO SE MOTION TO REDUCE SENTENCE
PURSUANT 18 U.S.C. §3582(c)(1)(A)(i) – COMPASSIONATE RELEASE**

The United States of America, through Timothy Garrison, United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to defendant's pro se motion for compassionate release. The defendant seeks to have his 240 month sentence for conspiracy to distribute cocaine reduced a second time to time served based upon extraordinary and compelling reasons. The defendant argues extraordinary and compelling reasons exist because the coronavirus (COVID-19) places him at risk if the defendant remains in the custody of the Bureau of Prisons (BOP). (D.E. #981.) Because the defendant has not demonstrated extraordinary and compelling reasons justifying a reduction, the Government opposes the request and asks the Court to deny the defendant's motion.

    **I.**    **Procedural History**

On June 11, 2009, a grand jury indicted Mr. Dunn and multiple others for various drug conspiracy charges. (D.E. #1.) A superseding indictment was brought on August 20, 2009, bringing additional charges to the group. (D.E. #143.) Mr. Dunn, along with four other co-defendants began a trial on February 14, 2010 (D.E. #545.) which ended in their convictions on

February 18, 2010 (D.E. #524.) Mr. Dunn was sentenced to 262 months BOP on October 6, 2011. (D.E. #636, #637.)  Mr. Dunn filed a Pro Se Motion to reduce his sentence which was granted on December 8, 2017, which reduced his 262 month sentence to 240 months.  (D.E. #955.)  Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant's release date is July 7, 2026.  (*See* https://www.bop.gov/inmateloc/.)

On April 27, 2020, the defendant filed a motion for compassionate release and asserts that the current situation regarding the coronavirus (COVID-19) places the defendant at risk if he remains in custody.  (D.E. #981.)  Prior to this filing, the defendant made a request for compassionate release to the Warden at USP Marion, Marion, Illinois, which was denied.

## II.     First Step Act

The First Step Act, effective December 21, 2018, provides inmates the ability to file a motion for compassionate release, an ability previously only vested in the United States Bureau of Prisons (BOP).  Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g).  (U.S.S.G. § 1B1.13(2).).  The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP.  (§1B1.13 Commentary n.1(D).)

The statute, 18 U.S.C. §3582(c)(1)(A), originally permitted judicial relief only upon a motion by the Director of the BOP. Section 603(b) of the First Step Act now permits courts to act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

As the proponent of a motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review—*i.e.*, that they have "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

### III. BOP Response to the Coronavirus Pandemic

The BOP has taken significant measures to protect the health of all inmates. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO). On March 13, 2020, the BOP announced that it was implementing the Coronavirus (COVID 19) Phase II Action Plan in order to minimize the risk of COVID-19

3

transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following:

- **Screening of Inmates and Staff:** All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility).

- **Quarantine Logistics:** All BOP institutions establish quarantine areas within their facilities to house any inmates found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol.

- **Suspension of Social Visits and Tours:** The BOP placed a 30-day hold on all social visits and tours.

- **Suspension of Legal Visits:** The BOP placed a 30-day hold on legal visits, with exceptions permitted on a case-by-case basis.

- **Suspension of Inmate Movements:** The BOP ceased the movement of inmates amongst its facilities for at least 30 days, with exceptions for medical treatment and other exigencies.

- **Modified Operations:** BOP facilities modified operations in order to maximize social distancing.

On March 18, 2020, the BOP implemented Phase III of the Action Plan maximizing telework for locations that perform administrative services. All cleaning, sanitation, and medical supplies were inventoried, and sufficient supplies were on hand and ready to be distributed to facilities as necessary. The BOP placed additional orders for supplies, in case of a protracted event. *See* https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (phases I-III).

Phase IV of the Action Plan was implemented on March 26, 2020. The BOP revised and updated its quarantine and isolation procedures to require all newly admitted inmates, whether in a sustained community transition area or not, be assessed using a screening tool and temperature

check. Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff. Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

On April 1, 2020, in response to a growing number of quarantine and isolation cases, the BOP implemented Phase V and directed the following actions be taken immediately to further mitigate the exposure and spread of COVID-19:

- For a 14-day period, inmates in every institution be secured in their cells/quarters to decrease the spread of the virus.

- During this time, to the extent practicable, inmates should still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.

- The BOP is to coordinate with the United States Marshals Service to significantly decrease incoming movement during this time.

- After 14 days, this decision will be reevaluated.

- Limited group gathering will be afforded to the extent practical to facilitate, commissary, laundry, showers, telephone, and Trust Fund Limited Inmate Computer System (TRULINCS) access.

*See* https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (phases IV-V).

Phase VI, implemented on April 13, 2020, extended all Phase V measures until May 18, 2020. https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf. On April 23, 2020, and again on May, 7, 2020, the BOP announced they had substantially expanded their ability to test inmates for COVID-19 by using Abbott ID NOW instruments for Rapid RNA testing. https://www.bop.gov/resources/news/pdfs/20200423_press_release_covid19_testing.pdf; https://www.bop.gov/resources/news/pdfs/20200507_press_release_expanding_rapid_testing.pdf Phase VII, announced on May 18, 2020, extended all measures from Phase VI, and will remain in place through June 30, 2020, at which time the plan will be evaluated.

https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp. Further details regarding the BOP's COVID-19 action plan and efforts are available at https://www.bop.gov/resources/news/20200313_covid-19.jsp and at a daily updated resource page: https://www.bop.gov/coronavirus/index.jsp.[1]

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission in a BOP institution. BOP professionals continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately inmates have nevertheless become ill, and more likely will in the weeks ahead. But the solution is not to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this pandemic, and the BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once

---

[1] According to the resource page, due to the rapidly evolving nature of this public health crisis, the BOP will update the dashboard daily at 3:00 p.m. based on the most recently available data from across the agency as reported by the BOP's Office of Occupational Health and Safety.

released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, the BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note.) On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidents of coronavirus transmission.

Even though the Government has asked the Court to dismiss the defendant's motion, the Government is sensitive to the issues the defendant raises related to the coronavirus pandemic. The Government does not minimize the concern or the risk to inmates such as the defendant. At the present time, the BOP has taken aggressive action to mitigate the danger for all inmates.

In this case, the defendant expresses concern for his health related to the coronavirus pandemic, and alleges he is in a category due to a preexisting medical condition that places him in a high risk category that would establish an extraordinary or compelling reason for a sentence reduction. He alleges he suffers from asthma, high blood pressure, and chronic lymphocytic leukemia.

### IV. The Defendant has Not Identified Extraordinary and Compelling Reasons

The Sentencing Commission's pertinent policy statement related to extraordinary or compelling reasons appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

The BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. Courts have frequently upheld the BOP's discretionary authority in its management duties over federal prisoners. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs].").

**Medical Condition of the defendant**

The application notes for U.S.S.G. 1B1.13 define medical condition of the defendant as:

Medical Condition of the Defendant.--

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

8

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(U.S.S.G. § 1B1.13 Application Note 1(A).)

In this case, the defendant states he has asthma, high blood pressure, and chronic lymphocytic leukemia (CLL). (D.E. #981.) The government has medical records that verify his allegations, however, the defendant has made an inadequate showing of extraordinary and compelling circumstances at this time. There is no evidence or claim that he is unable to provide self-care or perform daily living activities. The defendant has failed to sustain his burden to prove that he meets the requirements for compassionate release or a reduction of sentence. Of concern for the government, defendant Dunn's current diagnosis of chronic lymphocytic leukemia (CLL) which is hard to cure. Medical report state he is currently asymptomatic and persons with CLL often do not need treatment until they become symptomatic. His hypertension is being kept in control with medication and his blood pressure has been noted as good on all recent checks. His asthma is controlled by an albuterol inhaler, which he rarely uses and as such, has no medical restrictions placed on him by the medical staff. Therefore, the government believes there are no extraordinary and compelling reasons, as those terms are defined for the purpose of 18 U.S.C. § 3582(c)(1)(A), justifying compassionate release or any form of sentence reduction in this case, at this time.

The defendant argues his medical condition places the defendant at an increased risk should the defendant contract the coronavirus. (D.E. #981.) Unfortunately, the defendant's circumstance is not extraordinary in the context that many individual across the nation are in the same or similar position as the defendant, and the defendant's medical condition remains the same whether he is released. While the Government is attune to the difficulties facing inmates, this particular instance simply fails to meet the requirements of the law and policy. In *Dillon v. United States*, 560 U.S. 817, 826, (2010) the Supreme Court determined that the sentencing court could only consider a reduction in sentencing if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Based on that reasoning, U.S.S.G. § 1B1.13 Application Note 1(A) is mandatory and the defendant's request does not meet the requirements for release.

Here, the defendant has not argued he is at higher risk of getting sick or dying from COVID-19 based on his age or an underlying health condition such as heart disease, diabetes, or lung disease. *See* https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html. The CDC currently lists kidney disease, COPD, immunocompromised state from solid organ transplants, obesity, serious heart conditions such as heart failure, coronary heart disease, or cardiomyopathies, sickle cell disease, and type 2 diabetes as conditions that ***are at increased risk*** of severe illness from COVID-19. Mr. Dunn does not suffer from any of those medical conditions. The CDC does list the asthma and high blood pressure as medical conditions that ***might be at an increased risk*** for severe illness from COVID-19. As shown above, both his high blood pressure and asthma are both well taken care of by the BOP.

Mr. Dunn also argues that he was enhanced under 21 U.S.C. §851 prior to his trial and therefore received a higher sentence after his conviction. He argues, correctly, that his underlying conviction would not qualify for an enhancement today as a result of the recent changes in the law.

10

Unfortunately, the changes to the laws were not made retroactive, to his detriment. On October 1, 2019, the Government responded to this argument in relation to his 18 U.S.C. 3582(c)(1)(A) motion. (D.E. 971.)

The defendant's motion, however, does not address the measures that the BOP is undertaking to prevent the spread of the virus. Although our nation in the midst of a national crisis requiring extraordinary measures, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully-imposed sentences. The government would like to commend Mr. Dunn for not having any disciplinary violations the time he's been in federal custody and that he has completed numerous BOP programs.

## **CONCLUSION**

Based on the foregoing, the Government respectfully requests that the defendant's motion for compassionate release be denied now or until Mr. Dunn becomes symptomatic with CLL, at which time another request is made, showing the need for his release due to a possible worsening of his medical conditions.

Respectfully submitted this 1st day of July, 2020.

>                       Timothy A. Garrison
>                       United States Attorney
>
>                       */s/ Joseph M. Marquez*
>                       Joseph M. Marquez
>                       Assistant United States Attorney

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a copy of the foregoing was delivered on July 1, 2020, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and defendant at:

    Adrian L. Dunn 21571-045
    USP Marion
    4500 Prison Road
    Marion, IL 62959

            */s/Joseph M. Marquez*
            Assistant United States Attorney